# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

July 9, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER S. WINKLER,**
**Claimant Below, Petitioner**

**vs.)    No. 14-1021** (BOR Appeal No. 2049124)
(Claim No. 2010130149)

**CITY OF PRINCETON,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Christopher S. Winkler, by Gregory S. Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. City of Princeton, by Steven K. Wellman, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 10, 2014, in which the Board affirmed, in part, and reversed, in part, a January 9, 2014, Order of the Workers' Compensation Office of Judges. The Board of Review affirmed the Office of Judges insofar as it affirmed August 15, 2011, and April 10, 2013, claims administrator decisions granting no permanent partial disability award and denying a reopening of the claim on a permanent partial disability basis. The Board of Review reversed and vacated the Office of Judges' Order insofar as it reversed a May 9, 2013, claims administrator decision denying the addition of post-traumatic stress disorder and mood disorder to the claim. The Office of Judges held the claim compensable for post-traumatic stress disorder. The Board of Review reinstated the May 9, 2013, claims administrator's decision. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Winkler a patrolman and police officer in training, was injured during a training exercise with the West Virginia State Police Department on April 5, 2010. Treatment notes from Thomas Memorial Hospital diagnosed him with intracranial bleeding and concussion with loss of consciousness. A CT scan showed a left subdural hematoma and a left cerebral contusion. He was transferred to Cabell Huntington Hospital where he was kept under observation for four days. Mr. Winkler followed-up with James Weinstein, M.D., who noted on April 23, 2010, that Mr. Winkler was doing well and had requested to return to work. Mr. Winkler was released to return to work on June 25, 2010. In his treatment note, Dr. Weinstein stated that Mr. Winkler had no particular problems associated with the injury. Mr. Winkler worked for the City of Princeton as a police officer for the next eight months. On March 4, 2011, he resigned. In a May 5, 2011, letter to the claims administrator, Kelly Davis, finance director for the City of Princeton, stated that she was asked why Mr. Winkler was no longer employed by the West Virginia State Police Department. Ms. Davis stated that he was placed on administrative leave on March 2, 2011, because he was under investigation by the State Police. She noted that he was later charged with bribery.

Mr. Winkler underwent several evaluations in order to determine what, if any, psychological disorders he sustained as a result of the compensable injury. In a neuropsychological evaluation Robert Rhodes, Ph.D., stated that Mr. Winkler reported that he was severely beaten during a training session. He lost consciousness and was transported to the hospital where he was diagnosed with subarachnoid hemorrhage, subdural hematoma, and intracranial brain bleed. He remained in the hospital for three days. He also reported numerous symptoms including memory problems, impulse control, anxiety, and suicidal thoughts. Dr. Rhodes diagnosed adjustment disorder with mixed anxiety and depressed mood. He found that Mr. Winkler's intelligence was consistent with his intelligence prior to the injury, though his memory may have declined from his previous functioning. Mr. Rhodes opined that Mr. Winkler's difficulties with attention, response formulation, language, and cognitive flexibility are all consistent with the subdural hematoma; however, his anxiety and depression made a definitive diagnosis difficult.

In an independent medical evaluation, Bobby Miller, M.D., opined that Mr. Winkler had reached maximum medical improvement for the compensable injury and required no further treatment. He stated that he could return to work with no restrictions. Dr. Miller found that Mr. Winkler was malingering. He stated that he was prevented from returning to work by his perception of continued disability due to his brain injury. Dr. Miller, however, found no evidence of disability due to the injury. Two months later, James Petrick, Ph.D., performed a neuropsychological examination in which he diagnosed cognitive disorder secondary to brain trauma and mood disorder not otherwise specified. He opined that there was concern regarding cognition, emotional adjustment, an underlying disinhibitory process, and frontal lobe compromise.

In December 2011, treatment notes from Robert C. Byrd Clinic note that Mr. Winkler was experiencing mood swings, anger, paranoia, and personality changes. He was diagnosed with post-traumatic stress disorder, cognitive disorder, mood disorder, and personality changes all due to traumatic brain injury. In July of 2012, Bruce Guberman, M.D., testified in a

deposition that Mr. Winkler was not at maximum medical improvement when he evaluated him in March of 2011, and stated that it can take up to two years for a head injury to fully improve. He acknowledged that evaluating permanent impairment from cognitive deficits is more of a neuropsychologist or psychiatrist's area; however, if one has a report from that type of specialist, they can use the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) to give an impairment rating. He stated that the only evidence in the record he found of malingering was in Dr. Miller's report. Dr. Guberman found no evidence of malingering when he assessed Mr. Winkler. Dr. Guberman agreed that the reported symptoms were consistent with the compensable injury and that the reports of Drs. Rhodes and Petrick suggest some permanent impairment.

Ahmed Faheem, M.D., performed an evaluation on October 18, 2012, in which Mr. Winkler reported that he stopped working in May of 2011 due to problems he was having with reaction time, focus, and distraction. Dr. Faheem diagnosed post-traumatic stress disorder as a result of the compensable injury. He stated that he completely disagreed with Dr. Miller's conclusions. Dr. Faheem found no evidence of malingering. He found that Mr. Winkler had reached maximum medical improvement and assessed 7% impairment as a result of psychological conditions caused by the compensable injury. Shortly thereafter, William Bird, M.D., stated in an evaluation that Mr. Winkler suffered a traumatic brain injury that decreased his ability to function and created mood and personality disorders. He later opined that the compensable injury resulted in a cognitive disorder, mood disorder, personality changes, and post-traumatic stress disorder. Rebecca Thaxton, M.D., performed a physician review on April 10, 2013, regarding reopening the claim on a permanent partial disability basis. She found that the reopening form did not support the requested 7% award. The form failed to provide any evidence of impairment per the American Medical Association's *Guides* and simply summarily requested a 7% permanent partial disability award.

A final independent medical evaluation was performed by Stuart Burstein, M.D., in July of 2013. During the evaluation, Mr. Winkler reported nightmares, depression, anxiety, and paranoia. Dr. Burstein found that he had made a full recovery. He determined that Mr. Winkler had full capacity for attention, concentration, recall, and judgment. He found no indication of a psychological problem related to the compensable injury. He found indications of an adjustment disorder but opined that it was the result of Mr. Winkler's legal problems and not his work-related injury. Dr. Burstein stated that he had many subjective complaints that were unsupported by the mental evaluation findings. He assessed 0% impairment.

The claims administrator granted no permanent partial disability award on August 15, 2011. On April 10, 2013, it denied a reopening of the claim on a permanent partial disability basis. Finally, on May 9, 2013, the claims administrator denied the addition of post-traumatic stress or mood disorder to the claim. In its January 9, 2014, Order, the Office of Judges reversed the claims administrator's decision denying the addition of post-traumatic stress or mood disorder to the claim and added the condition to the claim. It affirmed the remaining claims administrator's decisions.

The Office of Judges found that Dr. Guberman concluded in his independent medical evaluation that Mr. Winkler was at maximum medical improvement and required no further treatment. His conclusion was based on a neuropsychiatric evaluation by Dr. Miller. The Office of Judges found that although Dr. Guberman testified at his deposition that the reports of Drs. Rhodes and Petrick did suggest some impairment, there has been no recommendation concerning whole person impairment on a neuropsychological basis greater than Dr. Guberman's finding of no impairment. The Office of Judges therefore found that the claims administrator's decision denying a permanent partial disability award was correct.

The Office of Judges determined that the claim reopening application was not of record. In a physician review, Dr. Thaxton opined that the reopening application does not support the requested 7% permanent partial disability award. She found that the form summarily requested a 7% award for traumatic brain injury without providing evidence of impairment per the American Medical Association's *Guides.* The Office of Judges concluded that because the form was not of record, there was no evidence showing a progression or aggravation of the compensable injury that would justify reopening the claim.

Lastly, the Office of Judges concluded that post-traumatic stress disorder was a compensable component of the claim. It found that Dr. Bird opined that Mr. Winkler's injury resulted in post-traumatic stress disorder. He noted that the condition was well-documented by multiple specialists. Dr. Bird stated that since the compensable injury, Mr. Winkler had marked personality and mood changes, difficulty with concentration and performing tasks, and trouble with personal and social interactions. The Office of Judges noted that Dr. Faheem stated in a report that Mr. Winkler suffered from post-traumatic stress disorder which developed as a result of the compensable injury. Dr. Faheem disagreed with Dr. Miller's finding of malingering. He stated that no other physician or evaluator of record found evidence of malingering. He noted that his own testing also failed to show evidence of malingering. The Office of Judges determined that his report was the most reliable of record regarding post-traumatic stress disorder and therefore reversed the claims administrator's decision and added the condition to the claim.

On September 10, 2014, the Board of Review reversed and vacated the Office of Judges' Order insofar as it added post-traumatic stress disorder to the claim, reinstated the claims administrator's decision denying the addition of the condition to the claim, and affirmed the remainder of the Office of Judges' Order. The Board of Review found that Mr. Winkler returned to work on June 28, 2010, and worked for approximately eight months before he resigned on March 4, 2011. He was on paid administrative leave prior to his resignation as the result of an investigation by the West Virginia State Police. The Board of Review found that during the eight months that he returned to work, there are no medical records that show he was suffering from psychiatric conditions. It was not until he resigned from work in the midst of legal problems that the record shows that he began to receive treatment for psychiatric complaints. Three years after the compensable injury, he requested that psychiatric conditions be added to the claim. The Board of Review therefore held that post-traumatic stress disorder did not arise in the course of and resulting from the compensable injury.

4

On appeal, Mr. Winkler argues that he reported symptoms of post-traumatic stress disorder shortly after his compensable injury and that his complaints were consistent throughout his treatment and evaluations by various doctors. He asserts that the Board of Review's finding that his symptoms are due to his loss of employment and criminal prosecution is without evidentiary support as no medical doctor made that assertion. The City of Princeton argues that Mr. Winkler's post-traumatic stress disorder, if it exists, is the result of his subsequent arrest and felony conviction. It states that he had no significant complaints consistent with post-traumatic stress disorder for months following his compensable injury and that his complaints did not arise until his legal problems began.

After review, we agree with the reasoning and conclusions of the Board of Review. The evidentiary record shows that following the compensable injury, Mr. Winkler's condition improved, he was released to return to work, and he worked for eight months with no problems. His complaints of psychological problems did not begin until he was forced to resign from his position due to legal problems. Dr. Miller found no evidence of work-related psychological conditions. Likewise, Dr. Burstein found that Mr. Winkler had no psychological problems related to the compensable injury. He also determined that Mr. Winnkler had several subjective complaints that were not supported by the mental evaluation findings. Based on the evidence and the standard of review, the Board of Review was within its right in reversing the Office of Judges' Order insofar as it added post-traumatic stress disorder to the claim. The Board of Review was also within its right to affirm the remainder of the Office of Judges' Order.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  July 9, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Justice Menis E. Ketchum

5